FILED
2021 Dec-03  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHER DIVISION

| | | |
|---|---|---|
| **ALLEN POYTHRESS JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. _____** |
| | ) | |
| **CITY OF ADAMSVILLE, MAYOR** | ) | **JURY TRIAL DEMANDED** |
| **PAM PALMER, LT. CHRIS SHAW** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## INTRODUCTION

1.     This is an action for legal and equitable relief to redress unlawful discrimination on the basis of race, retaliation, and hostile work environment against the Plaintiff, Allen Poythress, Jr. (hereinafter "Plaintiff"), a former employee of the City of Adamsville, Alabama.  This suit is brought to secure the protection of and to redress the deprivation of rights secured by the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff requests a trial by jury of all triable issues.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action pursuant to Title VII of the Civil Rights Act

of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.,* and 42 U.S.C. 1981.

3.      Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1343(a)(3), 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, *et. seq*.

4.      This action is brought within the State where the unlawful employment practices were committed, making venue proper under 42 U.S.C. 2000e-5(f)(3).

5.      Plaintiff's claims are authorized by 28 U.S.C. § § 2201 and 2202 (declaratory judgments), and Fed. R. Civ. P. Rule 57.

6.       Plaintiff has satisfied all administrative prerequisites to bringing this claim.

7.      Venue is proper in this Honorable Court.

## PARTIES

8.      Plaintiff Allen Poythress Jr. ("Plaintiff") is a 36-year-old African American male citizen of the United States and of the State of Alabama. He is a resident of this Judicial District and Division.

9.      Defendant City of Adamsville ("Defendant" or "City") is a local agency of the State of Alabama. At all times relevant hereto, the Defendant has engaged in business in Adamsville, Alabama and has been an employer within the meaning of 42 U.S.C. § 2000e(a), Title VII of the 1964 Civil Rights Act and the 1991

amendments thereto.  At all times relevant to this action, the Defendant has maintained and operated a business in Alabama and has fifteen (15) or more employees and is considered an employer for Title VII purposes and the 1991 amendments thereto.

10.    Defendant Mayor Pam Palmer is the mayor of the City of Adamsville. She is an adult resident of the State of Alabama and of this Judicial District and Division.

11.    Defendant Lt. Chris Shaw is a lieutenant with the City of Adamsville Police Department. He is an adult resident of the State of Alabama and of this Judicial District and Division.

## ADMINISTRATIVE PROCEDURES

12.    Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation, and the creation of a hostile work environment that occurred at the City of Adamsville.

13.    This action seeks to redress unlawful employment practices resulting from the acts of Defendants, its agents, servants, and employees committed with respect to Plaintiff's employment.

14.    Plaintiff timely filed his Charge of Discrimination (420-2021-00024) against Defendant with the Equal Employment Opportunity Commission (EEOC) on or about October 29, 2020, which was filed within 180 days of the commission

of the unlawful employment practices alleged herein. (*Exhibit A*)

15.     On or about March 8, 2021, Plaintiff timely filed an Amended Charge of Discrimination, which was filed within 180 days of the commission of the unlawful employment practices alleged herein. *(Exhibit C)*

16.     On September 7, 2021, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff a Notice of Right to Sue regarding his EEOC Charges. (*Exhibit B*). On November 10, 2021, the EEOC re-delivered the Notice of Right to Sue to Plaintiff and Plaintiff's attorney. *(Exhibit D).*

17.     Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue.

18.     All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## STATEMENT OF FACTS

19.     Plaintiff, Allen Poythress Jr., is a 36-year-old African American male.

20.     Plaintiff began employment with the Defendant, City of Adamsville, in or around July 2019 as a police officer.

21.     Plaintiff has been discriminated against because of his race and sex and has been subjected to a hostile work environment and retaliation in violation of Title VII, 42 USC 1981, and the Fourteenth Amendment.

22.     In or about May 2020, Lieutenant Chris Shaw ('Shaw") made sexually

disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Chief Warren Cotton ("Cotton"), but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance.  Shaw suspended Plaintiff pending an investigation into the incident with Isabel. On or about October 29, 2020, Plaintiff filed a charge of discrimination with the EEOC because of this incident.

23.    On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw.  Shaw is a part of the chain of command that receives and reviews grievances.  Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning an incident that occurred at the jail with an inmate named Jason Isabel, which is described below.

24.    On or about September 23, 2020, Plaintiff was on duty when himself and Sergeant Tony Washington ("Washington") were called to the city jail by Dispatcher Lisa Clifton ("Clifton"), a white female. Plaintiff and Washington were dispatched to the jail to assist with a non-compliant prisoner, Jason Isabel ("Isabel").

Clifton stated to Plaintiff and Washington that Isabel was screaming, cursing, and masturbating towards the jail staff. Upon arrival at the jail, Plaintiff and Washington were able to get Isabel to comply with orders and calm down. Plaintiff and Washington then left the jail.

25.     Approximately an hour later, Plaintiff and Washington were again summoned to assist with Isabel's behavior at the jail. Plaintiff and Clifton successfully placed Isabel in a restraint chair while Washington supervised. Plaintiff and Washington again left the jail.

26.     Approximately 45 minutes later, Plaintiff and Washington were again summoned to assist with Isabel. Clifton informed Plaintiff and Washington that Isabel freed his legs from the restraint chair. Plaintiff instructed Isabel to place his legs back in the restraint chair, but Isabel refused. Isabel attempted to kick the Plaintiff and Plaintiff was forced to deploy his taser in the drive stun mode on Isabel's right thigh. Isabel then complied and put his right leg back in the restraint chair. Plaintiff then told Isabel to place his left leg in the restraint chair, but Isabel refused. Plaintiff then drive stunned Isabel's left thigh and Isabel placed his left leg in the restraint chair. Plaintiff and Washington again left the jail.

27.     Approximately 45 minutes later, Clifton again called for plaintiff and Washington's help with Isabel. At this point, Isabel pulled his pants down to his ankles and was naked from the waist down. Isabel was restrained to the chair but

was not handcuffed. Plaintiff and Washington instructed Isabel to pull his pants back up, but Isabel did not comply. Plaintive touched Isabel's chest with an inactivated taser but did not deploy it. After several minutes of Isabel non-compliant behavior, plaintiff drive stunned Isabelle on his thigh. At all times during encounters with Isabel, plaintiff and Washington complied with all city of Adamsville Police Department rules and regulations concerning inmates and the use of force. plaintiff and Washington reported this use of force incident to Lieutenant Elvis Lenniger ("Lenniger").

28.     Approximately one-week later Shaw informed Plaintiff that he was under internal investigation and instructed Plaintiff to write a statement regarding the incident with Isabel.

29.     The following week, Lenniger placed Plaintiff and Washington on administrative leave with pay.

30.     On October 16th 2020, Plaintiff was terminated after an administrative hearing. Washington, Clifton and Charlotte Boykin ("Boykin"), a black female, were also terminated following the incident with Isabel.

31.     Shortly after terminating Clifton, the Defendant rehired Clifton, the only white employee involved in the incident with Isabel.

32.     Beth Money ("Money"), a white female dispatcher, punched a black female prisoner, Tanya Teague ("Teague"), in the face but was never disciplined. In

fact, Shaw championed Money's actions and referred to her as "Rocky."

33.    In or about May 2020, Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel.

34.    The Defendant has a habit and/or practice of allowing and condoning discrimination based on race and of retaliation.

35.    Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct. The actions of the Defendant have caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

## COUNT ONE
## PLAINTIFF'S CLAIMS OF RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII AGAINST DEFENDANT CITY OF
## ADAMSVILLE

36.    Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

37.     Plaintiff has been discriminated against because of his race in violation of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

38.     On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw.  Shaw is a part of the chain of command that receives and reviews grievances.  Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning an incident that occurred at the jail with an inmate named Jason Isabel, which is described below.

39.     On or about September 23, 2020, Plaintiff was on duty when himself and Sergeant Tony Washington ("Washington") were called to the city jail by Dispatcher Lisa Clifton ("Clifton"), a white female. Plaintiff and Washington were dispatched to the jail to assist with a non-compliant prisoner, Jason Isabel ("Isabel"). Clifton stated to Plaintiff and Washington that Isabel was screaming, cursing, and masturbating towards the jail staff. Upon arrival at the jail, Plaintiff and Washington were able to get Isabel to comply with orders and calm down. Plaintiff and Washington then left the jail.

40.     Approximately an hour later, Plaintiff and Washington were again summoned to assist with Isabel's behavior at the jail. Plaintiff and Clifton successfully placed Isabel in a restraint chair while Washington supervised. Plaintiff

and Washington again left the jail.

41.    Approximately 45 minutes later, Plaintiff and Washington were again summoned to assist with Isabel. Clifton informed Plaintiff and Washington that Isabel freed his legs from the restraint chair. Plaintiff instructed Isabel to place his legs back in the restraint chair, but Isabel refused. Isabel attempted to kick the Plaintiff and Plaintiff was forced to deploy his taser in the drive stun mode on Isabel's right thigh. Isabel then complied and put his right leg back in the restraint chair. Plaintiff then told Isabel to place his left leg in the restraint chair, but Isabel refused. Plaintiff then drive stunned Isabel's left thigh and Isabel placed his left leg in the restraint chair. Plaintiff and Washington again left the jail.

42.    Approximately 45 minutes later, Clifton again called for plaintiff and Washington's help with Isabel. At this point, Isabel pulled his pants down to his ankles and was naked from the waist down. Isabel was restrained to the chair but was not handcuffed. Plaintiff and Washington instructed Isabel to pull his pants back up, but Isabel did not comply. Plaintive touched Isabel's chest with an inactivated taser but did not deploy it. After several minutes of Isabel non-compliant behavior, plaintiff drive stunned Isabelle on his thigh. At all times during encounters with Isabel, plaintiff and Washington complied with all city of Adamsville Police Department rules and regulations concerning inmates and the use of force. plaintiff and Washington reported this use of force incident to Lieutenant Elvis Lenniger

("Lenniger").

43.    Approximately one-week later Shaw informed Plaintiff that he was under internal investigation and instructed Plaintiff to write a statement regarding the incident with Isabel.

44.    The following week, Lenniger placed Plaintiff and Washington on administrative leave with pay.

45.    On October 16th 2020, Plaintiff was terminated after an administrative hearing. Washington, Clifton and Charlotte Boykin ("Boykin"), a black female, were also terminated following the incident with Isabel.

46.    Shortly after terminating Clifton, the Defendant rehired Clifton, the only white employee involved in the incident with Isabel.

47.    Beth Money ("Money"), a white female dispatcher, punched a black female prisoner, Tanya Teague ("Teague"), in the face but was never disciplined. In fact, Shaw championed Money's actions and referred to her as "Rocky."

48.    The actions of the Defendant of conducting a meritless investigation and wrongfully terminating Plaintiff because of his race has caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

49.    The Defendant has a habit and/or practice of allowing and condoning discrimination based on race.

50.    Plaintiff has suffered embarrassment, humiliation, shame, damage to

reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct.

**COUNT TWO**
**PLAINTIFF'S CLAIMS OF RACE DISCRIMINATION**
**IN VIOLATION OF 42 U.S.C SECTION 1981**
**AGAINST ALL DEFENDANTS**

51.     Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

52.     Plaintiff has been discriminated against because of his race in violation of 42 U.S.C Section 1981.

53.     On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw.  Shaw is a part of the chain of command that receives and reviews grievances.  Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning an incident that occurred at the jail with an inmate named Jason Isabel, which is described below.

54.     On or about September 23, 2020, Plaintiff was on duty when himself and Sergeant Tony Washington ("Washington") were called to the city jail by Dispatcher Lisa Clifton ("Clifton"), a white female. Plaintiff and Washington were dispatched to the jail to assist with a non-compliant prisoner, Jason Isabel ("Isabel"). Clifton stated to Plaintiff and Washington that Isabel was screaming, cursing, and

masturbating towards the jail staff. Upon arrival at the jail, Plaintiff and Washington were able to get Isabel to comply with orders and calm down. Plaintiff and Washington then left the jail.

55. Approximately an hour later, Plaintiff and Washington were again summoned to assist with Isabel's behavior at the jail. Plaintiff and Clifton successfully placed Isabel in a restraint chair while Washington supervised. Plaintiff and Washington again left the jail.

56. Approximately 45 minutes later, Plaintiff and Washington were again summoned to assist with Isabel. Clifton informed Plaintiff and Washington that Isabel freed his legs from the restraint chair. Plaintiff instructed Isabel to place his legs back in the restraint chair, but Isabel refused. Isabel attempted to kick the Plaintiff and Plaintiff was forced to deploy his taser in the drive stun mode on Isabel's right thigh. Isabel then complied and put his right leg back in the restraint chair. Plaintiff then told Isabel to place his left leg in the restraint chair, but Isabel refused. Plaintiff then drive stunned Isabel's left thigh and Isabel placed his left leg in the restraint chair. Plaintiff and Washington again left the jail.

57. Approximately 45 minutes later, Clifton again called for plaintiff and Washington's help with Isabel. At this point, Isabel pulled his pants down to his ankles and was naked from the waist down. Isabel was restrained to the chair but was not handcuffed. Plaintiff and Washington instructed Isabel to pull his pants back

up, but Isabel did not comply. Plaintive touched Isabel's chest with an inactivated taser but did not deploy it. After several minutes of Isabel non-compliant behavior, plaintiff drive stunned Isabelle on his thigh. At all times during encounters with Isabel, plaintiff and Washington complied with all city of Adamsville Police Department rules and regulations concerning inmates and the use of force. Plaintiff and Washington reported this use of force incident to Lieutenant Elvis Lenniger ("Lenniger").

58.    Approximately one-week later Shaw informed Plaintiff that he was under internal investigation and instructed Plaintiff to write a statement regarding the incident with Isabel.

59.    The following week, Lenniger placed Plaintiff and Washington on administrative leave with pay.

60.    On October 16th 2020, Plaintiff was terminated after an administrative hearing. Washington, Clifton and Charlotte Boykin ("Boykin"), a black female, were also terminated following the incident with Isabel.

61.    Shortly after terminating Clifton, the Defendant rehired Clifton, the only white employee involved in the incident with Isabel.

62.    Beth Money ("Money"), a white dispatcher, punched a black female prisoner, Tanya Teague ("Teague"), in the face but was never disciplined. In fact, Shaw championed Money's actions and referred to her as "Rocky."

63.     Following the incident with Isabel, Plaintiff and two other black employees were terminated by the Defendant. The only white employee who was involved in the incident with Isabel was subsequently re-hired by the Defendant.

64.     The Defendant has intentionally discriminated against Plaintiff based on his race by conducting a meritless investigation and wrongfully terminating Plaintiff.

65.     The actions of the Defendant of conducting a meritless investigation and wrongfully terminating Plaintiff because of his race has caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

66.     The Defendant has a habit and/or practice of allowing and condoning discrimination based on race.

67.     Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct.

## COUNT THREE
## PLAINTIFF'S CLAIMS OF SEX DISCRIMINATION
## IN VIOLATION OF TITLE VII AGAINST DEFENDANT CITY OF ADAMSVILLE

68.     Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

69.     Plaintiff has been discriminated against because of his sex in violation of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

70.     In or about May 2020, Lieutenant Chris Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Chief Warren Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel.

71.     The actions of the Defendant of conducting a meritless investigation and wrongfully terminating Plaintiff because of his sex has caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

72.     The Defendant has a habit and/or practice of allowing and condoning discrimination based on sex.

73.     Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct.

**COUNT FOUR**
**PLAINTIFF'S CLAIMS OF RETALIATION**
**IN VIOLATION OF TITLE VII AGAINST DEFENDANT CITY OF**
**ADAMSVILLE**

74.     Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

75.     In or about May 2020, Lieutenant Chris Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Chief Warren Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel. On or about October 29, 2020, Plaintiff filed a charge of discrimination with the EEOC because of this incident.

76.     On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw. Shaw is a part of the chain of command that receives and reviews grievances. Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning the incident that occurred at the jail with Inmate Isabel.

77.     On or about October 16, 2020, Plaintiff was terminated following the meritless investigation initiated by Shaw.

## COUNT FIVE
## PLAINTIFF'S CLAIMS OF HOSTILE WORK ENVIORNMENT
## IN VIOLATION OF TITLE VII AGAINST DEFENDANT CITY OF
## ADAMSVILLE

78.     Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

79.     Plaintiff has been subjected to a hostile work environment because of his race and sex in violation of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

80.     On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw.  Shaw is a part of the chain of command that receives and reviews grievances.  Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning an incident that occurred at the jail with an inmate named Jason Isabel, which is described below.

81.     On or about September 23, 2020, Plaintiff was on duty when himself and Sergeant Tony Washington ("Washington") were called to the city jail by Dispatcher Lisa Clifton ("Clifton"), a white female. Plaintiff and Washington were dispatched to the jail to assist with a non-compliant prisoner, Jason Isabel ("Isabel"). Clifton stated to Plaintiff and Washington that Isabel was screaming, cursing, and masturbating towards the jail staff. Upon arrival at the jail, Plaintiff and Washington

were able to get Isabel to comply with orders and calm down. Plaintiff and Washington then left the jail.

82.    Approximately an hour later, Plaintiff and Washington were again summoned to assist with Isabel's behavior at the jail. Plaintiff and Clifton successfully placed Isabel in a restraint chair while Washington supervised. Plaintiff and Washington again left the jail.

83.    Approximately 45 minutes later, Plaintiff and Washington were again summoned to assist with Isabel. Clifton informed Plaintiff and Washington that Isabel freed his legs from the restraint chair. Plaintiff instructed Isabel to place his legs back in the restraint chair, but Isabel refused. Isabel attempted to kick the Plaintiff and Plaintiff was forced to deploy his taser in the drive stun mode on Isabel's right thigh. Isabel then complied and put his right leg back in the restraint chair. Plaintiff then told Isabel to place his left leg in the restraint chair, but Isabel refused. Plaintiff then drive stunned Isabel's left thigh and Isabel placed his left leg in the restraint chair. Plaintiff and Washington again left the jail.

84.    Approximately 45 minutes later, Clifton again called for plaintiff and Washington's help with Isabel. At this point, Isabel pulled his pants down to his ankles and was naked from the waist down. Isabel was restrained to the chair but was not handcuffed. Plaintiff and Washington instructed Isabel to pull his pants back up, but Isabel did not comply. Plaintive touched Isabel's chest with an inactivated

taser but did not deploy it. After several minutes of Isabel non-compliant behavior, plaintiff drive stunned Isabelle on his thigh. At all times during encounters with Isabel, plaintiff and Washington complied with all city of Adamsville Police Department rules and regulations concerning inmates and the use of force. plaintiff and Washington reported this use of force incident to Lieutenant Elvis Lenniger ("Lenniger").

85.    Approximately one-week later Shaw informed Plaintiff that he was under internal investigation and instructed Plaintiff to write a statement regarding the incident with Isabel.

86.    The following week, Lenniger placed Plaintiff and Washington on administrative leave with pay.

87.    On October 16th 2020, Plaintiff was terminated after an administrative hearing. Washington, Clifton and Charlotte Boykin ("Boykin"), a black female, were also terminated following the incident with Isabel.

88.    Shortly after terminating Clifton, the Defendant rehired Clifton, the only white employee involved in the incident with Isabel.

89.    Beth Money ("Money"), a white female dispatcher, punched a black female prisoner, Tanya Teague ("Teague"), in the face but was never disciplined. In fact, Shaw championed Money's actions and referred to her as "Rocky."

90.    In or about May 2020, Shaw made sexually disparaging comments

towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel

91.    In or about May 2020, Lieutenant Chris Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Chief Warren Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel. On or about October 29, 2020, Plaintiff filed a charge of discrimination with the EEOC because of this incident.

92.    On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Lt. Shaw. Lt. Shaw is a part of the chain of command that receives and reviews grievances. Lt. Shaw was aware of the grievance Plaintiff

filed wherein Plaintiff objected to Lt. Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Lt. Shaw initiated a meritless investigation into Plaintiff concerning the incident that occurred at the jail with Inmate Isabel.

93.     On or about October 16, 2020, Plaintiff was terminated following the meritless investigation initiated by Lt. Shaw.

94.     The actions of the Defendant of conducting a meritless investigation and wrongfully terminating Plaintiff because of his race and sex has caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

95.     Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct.

96.     The Defendant has a habit and/or practice of allowing and condoning discrimination based on race and sex.

**COUNT SIX**
**PLAINTIFF'S CLAIMS OF VIOLATIONS OF THE 14TH AMENDMENT
UNDER 42 U.S.C. SECTION 1983 AGAINST ALL DEFENDANTS**

97.     Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-five (35) as if fully set forth herein.

98.     The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §

1.

99.     By and through their conduct as described herein, and acting under color of state law to deprive Plaintiff of his right equal protection of the law under the Fourteenth Amendment of the United States Constitution, the Defendants are liable for violations of 42 U.S.C. § 1983 which prohibits the deprivations, under color of state law, of rights secured under the United States Constitution.

100.    On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Shaw.  Shaw is a part of the chain of command that receives and reviews grievances.  Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Shaw's comments towards Plaintiff. The same day Plaintiff filed the grievance, Shaw initiated a meritless investigation into Plaintiff concerning an incident that occurred at the jail with an inmate named Jason Isabel, which is described below.

101.    On or about September 23, 2020, Plaintiff was on duty when himself and Sergeant Tony Washington ("Washington") were called to the city jail by Dispatcher Lisa Clifton ("Clifton"), a white female. Plaintiff and Washington were dispatched to the jail to assist with a non-compliant prisoner, Jason Isabel ("Isabel"). Clifton stated to Plaintiff and Washington that Isabel was screaming, cursing, and masturbating towards the jail staff. Upon arrival at the jail, Plaintiff and Washington were able to get Isabel to comply with orders and calm down. Plaintiff and

Washington then left the jail.

102.   Approximately an hour later, Plaintiff and Washington were again summoned to assist with Isabel's behavior at the jail. Plaintiff and Clifton successfully placed Isabel in a restraint chair while Washington supervised. Plaintiff and Washington again left the jail.

103.   Approximately 45 minutes later, Plaintiff and Washington were again summoned to assist with Isabel. Clifton informed Plaintiff and Washington that Isabel freed his legs from the restraint chair. Plaintiff instructed Isabel to place his legs back in the restraint chair, but Isabel refused. Isabel attempted to kick the Plaintiff and Plaintiff was forced to deploy his taser in the drive stun mode on Isabel's right thigh. Isabel then complied and put his right leg back in the restraint chair. Plaintiff then told Isabel to place his left leg in the restraint chair, but Isabel refused. Plaintiff then drive stunned Isabel's left thigh and Isabel placed his left leg in the restraint chair. Plaintiff and Washington again left the jail.

104.   Approximately 45 minutes later, Clifton again called for plaintiff and Washington's help with Isabel. At this point, Isabel pulled his pants down to his ankles and was naked from the waist down. Isabel was restrained to the chair but was not handcuffed. Plaintiff and Washington instructed Isabel to pull his pants back up, but Isabel did not comply. Plaintive touched Isabel's chest with an inactivated taser but did not deploy it. After several minutes of Isabel non-compliant behavior,

plaintiff drive stunned Isabelle on his thigh. At all times during encounters with Isabel, plaintiff and Washington complied with all city of Adamsville Police Department rules and regulations concerning inmates and the use of force. plaintiff and Washington reported this use of force incident to Lieutenant Elvis Lenniger ("Lenniger").

105.   Approximately one-week later Shaw informed Plaintiff that he was under internal investigation and instructed Plaintiff to write a statement regarding the incident with Isabel.

106.   The following week, Lenniger placed Plaintiff and Washington on administrative leave with pay.

107.   On October 16th 2020, Plaintiff was terminated after an administrative hearing. Washington, Clifton and Charlotte Boykin ("Boykin"), a black female, were also terminated following the incident with Isabel.

108.   Shortly after terminating Clifton, the Defendant rehired Clifton, the only white employee involved in the incident with Isabel.

109.   Beth Money ("Money"), a white female dispatcher, punched a black female prisoner, Tanya Teague ("Teague"), in the face but was never disciplined. In fact, Shaw championed Money's actions and referred to her as "Rocky."

110.   In or about May 2020, Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only

gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel

111.   In or about May 2020, Lieutenant Chris Shaw made sexually disparaging comments towards Plaintiff wherein Shaw stated Plaintiff "walked like a faggot" and that "only gays walked that way" and since Plaintiff walked like this Plaintiff "must be one." Shortly thereafter, Plaintiff reported this conduct to Chief Warren Cotton, but no action was taken. Plaintiff then filed a grievance on September 27, 2020. As Shaw is a functioning part of the chain of command who receives grievances, he was aware of the filing and the same day Plaintiff filed the grievance, Shaw suspended Plaintiff pending an investigation into the incident with Isabel. On or about October 29, 2020, Plaintiff filed a charge of discrimination with the EEOC because of this incident.

112.   On or about September 27, 2020, Plaintiff filed a formal grievance concerning the incident with Lt. Shaw. Lt. Shaw is a part of the chain of command that receives and reviews grievances. Lt. Shaw was aware of the grievance Plaintiff filed wherein Plaintiff objected to Lt. Shaw's comments towards Plaintiff. The same

day Plaintiff filed the grievance, Lt. Shaw initiated a meritless investigation into Plaintiff concerning the incident that occurred at the jail with Inmate Isabel.

113.   On or about October 16, 2020, Plaintiff was terminated following the meritless investigation initiated by Lt. Shaw.

114.   The actions of the Defendant of conducting a meritless investigation and wrongfully terminating Plaintiff because of his race and sex has caused the Plaintiff financial loss, emotional distress, and a contracted quality of life.

115.   Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages because of Defendant's unlawful conduct.

## GENERAL PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A.    Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto, 42 U.S.C. 2000e, et seq., 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1983; and the Age Discrimination Act of 1967.

B.    Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

C.    Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, pay raises with back pay, and reinstatement to the job position from which he was discriminatorily denied, or in the alternative, front pay;

D.    Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

E.    Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

F.    Award such other relief as may be appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

Respectfully Submitted,

*/s/ Scott T. Morro*_____
Scott T. Morro (ASB-4954-C30M)
Attorney for Plaintiff
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL 35071
Telephone: (205) 631-6301
morrolawcenter@bellsouth.net

*/s/ Zachary S. Morro*_____
Zachary S. Morro (ASB-0464-D37X)
Attorney for Plaintiff

Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL 35071
Telephone: (205) 631-6301
zsmorro@zsmlaw.com

**DEFENDANTS TO BE SERVED VIA PRIVATE PROCESS SERVER**